**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-3731 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| JPMORGAN CHASE BANK, N.A., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

### MEMORANDUM OPINION & ORDER

This case is about a house and two courthouses. On the surface, the case looks simple: it's about a foreclosure on a home. Plaintiff James Stewart owned a house in Chicago. He later refinanced the purchase with a mortgage from Defendant JPMorgan Chase Bank, N.A.

Stewart's fortunes apparently took a turn for the worse. Chase brought foreclosure actions against Stewart in Illinois state court – three times – in 2017 and 2018. Chase ultimately prevailed, and the state court ordered the sale of the property in the summer of 2023.

Before the litigation in state court ended, Stewart sued Chase and its lawyers in federal court under the Fair Debt Collection Practices Act, twice. He filed the first case in 2018, and he filed the case at hand in 2023. He filed the current case when the state case was pending, but not quite over.

By opening a second judicial front, Stewart opened a jurisdictional can of worms. A number of abstention doctrines come into play when a federal lawsuit has something to do with a state lawsuit. Chase and its lawyers now move to dismiss based on two of those doctrines, the *Colorado River* doctrine and the *Rooker-Feldman* doctrine.

The applicability of the abstention doctrines depends in part on timing. The *Colorado River* abstention doctrine applies when a federal case would interrupt an ongoing state case. The *Rooker-Feldman* doctrine comes into play when a loser in state court comes to federal court to unwind a state court judgment.

As it turns out, the case at hand involves the Goldilocks of dates. That is, this case lives in the sweet spot between two jurisdictional bars. Stewart filed the federal case too early for the *Rooker-Feldman* doctrine to apply, because the state case was not quite over. And it is now too late for *Colorado River* abstention, because the state case has now ended. This lawsuit is a little too early, and a little too late.

The motions to dismiss are largely about the abstention doctrines. But Chase also moved to dismiss based on the fact that it is not a "debt collector" within the meaning of the Fair Debt Collection Practices Act. Judge Rowland already reached that conclusion in the prior federal case between Stewart and Chase, involving the very same mortgage. There is no reason to revisit that ruling here.

For the reasons explained below, the motions to dismiss are granted in part and denied in part. The abstention doctrines don't prevent the case from rolling forward. The *Colorado River* and *Rooker-Feldman* doctrines do not apply because of the timing of this federal lawsuit. The abstention doctrines don't stand in the way, but Chase and its lawyers don't belong here for other reasons.

**Background**

At the motion to dismiss stage, the Court must accept the complaint's well-pleaded allegations as true. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast

2

the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

In March 2011, Plaintiff James Stewart entered into a refinance mortgage loan agreement with Defendant JPMorgan Chase Bank, N.A. The mortgage covered his home at 8132 South Harvard Avenue in Chicago. *See* Mortgage (Dckt. No. 15-2). He borrowed $147,050.[1] *Id.*

Stewart's mortgage with Chase sparked an explosion of litigation, beginning in 2017. Chase filed three foreclosure actions about the mortgage in state court between 2017 and 2018. *See* Cplt., at ¶¶ 24–26 (Dckt. No. 1). Stewart turned the tables and filed a federal lawsuit in 2018, and then filed the federal case at hand in 2023.

The timing of what happened in state court matters for what happens in this federal case, too. The procedural history in state court is long, and a bit tedious, but the punchline is simple. Chase litigated with Stewart for years in state court, in three different lawsuits. In the end, Chase prevailed in state court, and his property was sold.

At the start of each foreclosure action, Chase was represented by the law firm of McCalla Raymer Liebert Pierce LLC. *Id.* That firm is a defendant in the case at hand.

Chase filed the first action in state court to foreclose the mortgage in June 2017. *Id.* at ¶ 24. That action was voluntarily dismissed in October 2017. *Id.*

Chase filed a second foreclosure action about the same mortgage in November 2017. *Id.* at ¶ 25. That action was dismissed without prejudice in May 2018. *Id.*

---

[1] The other federal lawsuit provides some additional background. Apparently, Stewart obtained a mortgage loan from Washington Mutual Bank for $150,000 in 2007. The FDIC became the receiver after WaMu went bust. Chase later purchased some of WaMu's assets, including the loan to Stewart. In March 2011, Stewart and Chase refinanced the loan. Chase explained that backstory in its motion to dismiss in the other federal lawsuit. *See Stewart v. JPMorgan Chase Bank, N.A.*, 18-cv-7584 (Dckt. No. 57).

The parties don't tell the backstory about the dismissals of those two lawsuits. Maybe Stewart and Chase reached a forbearance agreement of some kind. Or maybe Stewart paid enough to make the lawsuits go away. Or maybe something else was going on.

The parties don't provide the details, so the reason for the dismissals is a bit of a mystery. Whatever the reason, the important thing is that the first two lawsuits ended in dismissals.

But not for long. A few days after the dismissal of the second foreclosure action (and still in May 2018), Chase filed a third foreclosure action against Stewart in Cook County. *Id.* at ¶ 26.

Meanwhile, Stewart opened a second judicial front. He filed a federal lawsuit against Chase and its lawyers, bringing claims under the Fair Debt Collection Practices Act. *See Stewart v. JPMorgan Chase Bank N.A.*, 18-cv-7584 (N.D. Ill. 2018). The case was assigned to Judge Rowland.

That case – like the case at hand, and like the three cases in state court – involved Stewart's mortgage loan from Chase. The case before Judge Rowland lasted until 2021, after hundreds of docket entries. The case before Judge Rowland was hotly contested, as illustrated by the fact that the opinions are ominously dubbed *Stewart I*, *Stewart II*, and *Stewart III*.

In January 2019, back in state court, Stewart filed a motion to dismiss the third foreclosure action. *See* Cplt., at ¶ 27 (Dckt. No. 1). He argued that the third foreclosure action was barred under state law. He invoked a state rule of procedure known as the "one-filing" rule under 735 ILCS 5/13-217. *Id.*

In March 2019, Chase responded in state court by moving to resurrect and reinstate the second foreclosure action (from November 2017). *Id.* at ¶ 29. The judge set a briefing schedule,

4

which Stewart views as improper. *Id.* at ¶¶ 31–35. He now accuses the judge of unethical behavior. *Id.*

In May 2019, Stewart filed a brief opposing Chase's motion to reinstate. He argued that reinstating the second foreclosure action would violate the "one-filing" rule. *See* Def. Opp. to Pl.'s Mtn. to Reinstate (Dckt. No. 15-9).

The state court disagreed and granted Chase's motion to reinstate in July 2019. *See* 7/16/2019 Order (Dckt. No. 15-10). So the second state case came back to life. The state court granted Chase leave to amend its complaint, too. *Id.* Stewart now argues that the state court did not have jurisdiction to reinstate the case. *See* Cplt., at ¶ 30 (Dckt. No. 1).

The parties charged on. Chase filed an amended complaint in the second foreclosure action in July 2019. *See* Am. Cplt. to Foreclose Mortgage (Dckt. No. 15-11). In August 2019, the state court consolidated the second foreclosure action (from November 2017) with the third foreclosure action (from May 2018). *See* 8/8/19 Order of Consolidation (Dckt. No. 15-12).

After several years of litigating about the mortgage, Chase eventually moved for summary judgment in state court in September 2022. *See* Pl.'s Mtn. for Summ. J. (Dckt. No. 15-20). The state court dismissed the foreclosure action for want of prosecution in October 2022. *See* Cplt., at ¶ 38 (Dckt. No. 1). The bank's counsel apparently missed a hearing, so the state court tossed the case. *See* 11/14/22 Mtn. to Vacate Dismissal Order (Dckt. No. 15-21).

But the dismissal didn't last long. Chase moved to vacate the dismissal order in November 2022. *Id.* Later that month, the state court granted Chase's motion and reinstated the foreclosure action. *See* 11/29/22 Order (Dckt. No. 15-22).

In January 2023, Stewart (once again) moved to dismiss the state court foreclosure action because of the "one-filing" rule. *See* 1/9/23 Mtn. to Dismiss (Dckt. No. 15-23). The state court

denied Stewart's motion to dismiss with prejudice in April 2023. *See* 4/4/23 Order (Dckt. No. 15-25).

Meanwhile, Chase changed law firms in January 2023. *See* 1/24/23 Order (Dckt. No. 15-24). Instead of McCalla, the law firm of Heavner, Beyers & Mihlar, LLC began representing Chase. *Id.* As you might have guessed, the second law firm is a defendant in the case at hand, too.

In May 2023 – a month after the state court denied his motion to dismiss – Stewart moved for declaratory judgment for lack of subject matter jurisdiction. *See* 5/23/23 Mtn. for Declaratory J. (Dckt. No. 15-26). The state court denied the declaratory judgment motion. *See* 5/31/23 Order (Dckt. No. 15-27).

The state court gave Stewart until June 2023 to respond to Chase's summary judgment motion. *Id.* But Stewart never responded to that motion.

In July 2023, things finally came to an end in state court. The state court granted Chase's motion for summary judgment. *See* 7/12/23 Summ. J. Order (Dckt. No. 15-30). That day, the state court entered a judgment of foreclosure and sale. *See* 7/12/23 Judgment (Dckt. No. 15-31). At long last, Stewart finally hit a wall in state court.

And a few months later, in November 2023, the state court issued an order approving the sale of 8132 South Harvard. *See* 11/28/23 Order (Dckt. No. 49-1).

As the foreclosure proceedings began winding down, things were heating up here in federal court.[2] Stewart filed a three-count complaint in federal court – the second federal lawsuit

---

[2] Recall, Stewart tangoed with Chase and McCalla in a previous federal lawsuit. In November 2018, Stewart sued Chase, McCalla, and other defendants about the mortgage foreclosure proceeding. *See* 2018 Fed. Lawsuit Dckt., at 2 (Dckt. No. 15-35). Both Chase and McCalla ended up settling with Stewart. *See id.* at 18–19.

– in June 2023. That's the case at hand. This case is the fifth lawsuit between Stewart and Chase about the attempt to foreclose on the same home under the same mortgage.

Stewart sued Chase, McCalla (the first law firm), and Heavner (the second law firm). *See* Cplt. (Dckt. No. 1). He also sued the attorneys individually, including two attorneys from McCalla (Mark McGinn and Joshua Emberton) (the "McCalla Defendants") and three attorneys from Heavner (Penny Eilers, Karen Mitch, and Veronika Miles) (the "Heavner Defendants"). *Id.*

In Counts I and II, Stewart brings claims against the bank and its two law firms under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). *Id.* at 13–18. Count III alleges that the attorneys and the law firms violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq. Id.* at 18–20.

Stewart seeks money damages and injunctive relief, preventing "Defendants from continuing to harass, delay, and needlessly increase the cost of litigation . . . ."[3] *Id.* at 20.

Stewart filed this federal lawsuit shortly before the state court litigation came to a close. He filed the federal complaint in June 2023, one month before the state court entered a judgment of foreclosure and sale in July 2023.

Defendants responded to the latest voyage to the federal courthouse with a motion to dismiss. Chase moved to dismiss for lack of subject matter jurisdiction, and for failure to state a claim. *See* Chase Mtn. to Dismiss (Dckt. No. 14). Chase also challenged service of process, but after a little judicial nudge, Chase waived service of process.[4]

---

[3] The request for injunctive relief is moot to the extent that it covered the ongoing state court case, because that case is over. As an aside, this Court assumes that Stewart wasn't asking this Court to enjoin the state court case itself, which would have raised issues under the Anti-Injunction Act.

[4] The Court asked Chase to "file a statement whether it [was] willing to waive service of process." *See* 1/9/24 Order (Dckt. No. 52). In response, Chase filed a status report confirming that it would waive service of process, and it returned an executed waiver. *See* Status Report Re: Waiver of Service of Process (Dckt. No. 53); Chase Waiver of Service (Dckt. No. 54). Any arguments about dismissal based on a lack of service of process are moot.

The two law firms and the attorneys moved to dismiss, too. Like the bank, the law firms and the lawyers argue that this Court lacks subject matter jurisdiction. *See* McCalla Defs.' Mtn. to Dismiss (Dckt. No. 26); Heavner Defs.' Mtn. to Dismiss (Dckt. No. 29). They also moved to dismiss the state law claim for failure to state a claim. But the law firms and the lawyers did not address whether the complaint adequately alleged a claim against them under the FDCPA.

## Legal Standard

Defendants filed motions to dismiss for lack of subject matter jurisdiction, and motions to dismiss for failure to state a claim.

A motion to dismiss for lack of subject matter jurisdiction falls under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). A motion to dismiss on abstention grounds – such as Defendants' motions – "'does not fit neatly into Rule 12(b)(1) or Rule 12(b)(6),' but when such a motion 'asks the Court to decline jurisdiction,' . . . 'it fits more comfortably under Rule 12(b)(1).'" *Nadzhafaliyev v. Hardy*, 403 F. Supp. 3d 663, 667 (N.D. Ill. 2019) (quoting *Bolton v. Bryant*, 71 F. Supp. 3d 802, 809 n.2 (N.D. Ill. 2014)).

Under Rule 12(b)(1), the district court must accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. *See Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 624 (7th Cir. 2017); *see also Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). In considering a Rule 12(b)(1) motion, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). The party who invokes federal jurisdiction bears the burden to prove that jurisdiction exists. *See Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009).

8

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When parties move to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), courts must first address jurisdiction before turning to the merits. *See Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013). Jurisdiction comes first.

When reviewing a motion to dismiss, the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The court "may take judicial notice of public records, including public court documents, in ruling on a motion to dismiss under Rule 12(b)(6)." *White v. Keely*, 814 F.3d 883, 886 (7th Cir. 2016). "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

## Analysis

Subject matter jurisdiction is the starting point for any federal lawsuit. *See Wernsing v. Thompson*, 423 F.3d 732, 743 (7th Cir. 2005) ("Jurisdiction is the power to declare law, and without it the federal courts cannot proceed."). Subject matter jurisdiction is the don't-leave-home-without-it part of any case in federal court.

This Court will start with the arguments about subject matter jurisdiction, and then will turn to the motions about failure to state a claim.

## I.      Subject Matter Jurisdiction

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *AXA Corp. Sols. v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (citation omitted). But sometimes federal courts hit the pause button, or toss a complaint altogether, out of deference to a related case in state court. Abstention doctrines offer a narrow path for federal courts to refrain from exercising jurisdiction, but sometimes federal courts take the road less traveled. *See J.B. v. Woodard*, 997 F.3d 714, 721 (7th Cir. 2021).

Abstention doctrines have a lot of tributaries, and this case potentially involves two of them. Defendants invoke the *Colorado River* abstention doctrine, and the *Rooker-Feldman* doctrine. The Court will address the two doctrines in that order.

### A.      The *Colorado River* Doctrine

The *Colorado River* doctrine is about when federal courts must yield to an ongoing case in state court. The *Colorado River* doctrine "allows courts to conserve judicial resources by abstaining from accepting jurisdiction when there is a parallel proceeding" in state court. *Baek v. Clausen*, 886 F.3d 652, 663 (7th Cir. 2018) (cleaned up).

Two questions determine whether *Colorado River* applies. "The first question is whether the concurrent state and federal actions are actually parallel. If so, the second question is whether the necessary exceptional circumstances exist to support abstention." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 526 (7th Cir. 2021) (cleaned up); *see also TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005).

If a state case is ongoing, the *Colorado River* doctrine empowers district courts to put the federal case on ice. Time and again, the Seventh Circuit has held that "a stay, not dismissal, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine." *Selmon v. Portsmouth Drive Condo. Ass'n*, 89 F.3d 406, 409 (7th Cir. 1996); *see also Montaño v. City of Chicago*, 375 F.3d 593, 602 (7th Cir. 2004) (collecting cases); *Smart Mortg. Centers, Inc. v. Noe*, 2021 WL 2291073, at *6 (N.D. Ill. 2021) ("The Seventh Circuit routinely holds that *Colorado River* should be implemented through a stay, not dismissal."). *Colorado River* treats litigation like a one-lane road, and a federal court often yields to a state court case that is already en route.

"The principal purpose of a stay under *Colorado River* is judicial economy." *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1157 (7th Cir. 1990); *see also Wildberry Condo. Ass'n v. Travelers Indem. Co. of Am.*, 522 F. Supp. 3d 432, 442 (N.D. Ill. 2021) ("The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results.") (citation omitted). Put differently, "the general principle is to avoid duplicative litigation." *See* 17A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 4247 (3d ed. 2023). Courts are flooded as it is, so two courts should not have to carry the same load at the same time, absent some good reason.

"Although *Colorado River* abstention is primarily concerned with judicial economy, it also implements the fundamental federalism principles that animate all abstention categories." *Valcq*, 16 F.4th at 528; *see also* 17A James Wm. Moore *et al.*, Moore's Federal Practice § 122.04 (3d ed. 2023) ("Considerations of federalism and interstate comity undergird virtually all of abstention's many doctrinal permutations."). Federal courts may abstain from exercising their power when state courts have a strong interest in pressing forward, and when "there is no significant federal interest at stake . . . that necessitates or even encourages federal-court review." *See Valcq*, 16 F.4th at 528.

A stay is temporary. After the litigation in state court concludes, a party can move in federal court to lift the stay and plow forward. *See Freed v. Weiss*, 974 F. Supp. 2d 1135, 1150 (N.D. Ill. 2013), *aff'd sub nom. Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013 (7th Cir. 2014). At that point, the federal court will move forward in a manner consistent with the state proceedings – so, claim or issue preclusion could dispose of the plaintiff's claims. *See id.*; *Alvarado v. U.S. Bank Nat'l Ass'n*, 2016 WL 3964051, at *3 (N.D. Ill. 2016).

A stay in federal court typically lasts as long as the case in state court lasts. But once the state court case is over, there is no more traffic jam. There is no need to yield to an ongoing state court case after it ends, and the road is clear.

Here, the state court case has run its course. The state court ordered the sale of Stewart's property and entered final judgment in July 2023. *See* 11/28/23 Order (Dckt. No. 49-1). This Court cannot defer to ongoing state-court litigation because the state case is over. There is nothing to defer *to*.

The *Colorado River* ship has sailed. *Colorado River* does not impose a jurisdictional bar.

B.    The *Rooker-Feldman* Doctrine

Defendants also seek dismissal based on the *Rooker-Feldman* doctrine.  Timing issues

prevent that doctrine from coming into play, too.

The *Rooker-Feldman* doctrine applies when parties come to federal court to undo a

judgment in state court.  The *Rooker-Feldman* doctrine "prevents the lower federal courts from

exercising jurisdiction over cases brought by state-court losers challenging state-court judgments

rendered *before* the district court proceedings commenced."  *Lance v. Dennis*, 546 U.S. 459, 460

(2006) (cleaned up) (emphasis added); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S.

280, 284 (2005) ("The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind

from which the doctrine acquired its name: cases brought by state-court losers complaining of

injuries caused by state-court judgments rendered *before* the district court proceedings

commenced and inviting district court review and rejection of those judgments.") (emphasis

added).

The *Rooker-Feldman* doctrine springs from two Supreme Court cases where plaintiffs

"litigated and lost in state court . . . [then] essentially invited federal courts of first instance to

review and reverse [the] unfavorable state court judgments."  *Arnold v. KJD Real Estate LLC*,

752 F.3d 700, 704 (7th Cir. 2014) (quoting *Saudi Basic Indus.*, 544 U.S. at 283); *see also Rooker*

*v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983).

Losers in state court cannot reverse their fortunes by winning in federal court.  State court

losers cannot become federal court winners.[5]

---

[5]  Habeas is a rare exception.  *See Sides v. City of Champaign*, 496 F.3d 820, 824 (7th Cir. 2007)
("[E]xcept to the extent authorized by § 2254, only the Supreme Court of the United States may set aside
a judgment entered by a state court."); *see also Crestview Vill. Apartments v. U.S. Dep't of Hous. &
Urban Dev.*, 383 F.3d 552, 555–56 (7th Cir. 2004) ("[L]ower federal courts are not authorized to review
appeals from state court judgments except, of course, where Congress has explicitly authorized such
collateral review."); *Garry v. Geils*, 82 F.3d 1362, 1365 n.4 (7th Cir. 1996).

*Rooker-Feldman* is a jurisdictional inquiry because the lower federal courts do not have the authority to review state court judgments. "Congress empowered only the Supreme Court to exercise appellate authority to reverse and modify state court judgments." *Arnold*, 752 F.3d at 705 (citing 28 U.S.C. § 1257); *see also* Erwin Chemerinsky, *Federal Jurisdiction* § 13.2, at 870 (7th ed. 2016) (opining that *Rooker-Feldman* "implements the principle that federal court review of state court rulings is limited to appellate review in the U.S. Supreme Court"); *see also Milchtein v. Chisholm*, 880 F.3d 895, 897 (7th Cir. 2018). Put differently, "[t]he rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (citation omitted).

*Rooker-Feldman* is a jurisdictional, first-step inquiry. But it has "parallels" to the non-jurisdictional doctrines of claim and issue preclusion. *See* 18B Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 4469.3 (3d ed. 2023); *see also* Erwin Chemerinsky, *Federal Jurisdiction* § 13.2, at 870 (7th ed. 2016) ("[I]t is unclear what the *Rooker-Feldman* doctrine adds to other doctrines, such as the requirement that the federal courts give res judicata effect to state court decisions . . . .").

*Rooker-Feldman* is different from preclusion in several important ways. First, *Rooker-Feldman* is jurisdictional, so it is non-waivable and must be raised *sua sponte* by the Court. Second, *Rooker-Feldman* rests exclusively on federal law, but preclusion doctrines often look to state law. Third, *Rooker-Feldman* typically does not prevent "actions by prior non-parties even if they would be in privity with a state-court loser and thus subject to preclusion." *See* 18 James Wm. Moore *et al.*, Moore's Federal Practice § 133.33[1][c] (3d ed. 2023). Also, because

14

*Rooker-Feldman* is jurisdictional, a dismissal under the doctrine is not on the merits – but a dismissal on preclusion grounds can be with prejudice. *Id.*

Timing is everything under *Rooker-Feldman*. *See Cooney v. Rossiter*, 2008 WL 3889945, at *2 (N.D. Ill. 2008), *aff'd,* 583 F.3d 967 (7th Cir. 2009). *Rooker-Feldman* applies only when the state-court judgment was "rendered *before* the district court proceedings commenced." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005) (emphasis added).

Put differently, the doctrine applies only if "the losing party in state court filed suit in federal court *after the state proceedings ended*." *Saudi Basic Indus.*, 544 U.S. at 291 (emphasis added); *see also J.B. v. Woodard*, 997 F.3d 714, 722–23 (7th Cir. 2021) ("Nor is the *Rooker-Feldman* doctrine spot on . . . . Because Edwin filed his federal lawsuit while the domestic relations court's proceedings over parenting time remained ongoing, he is not a state-court loser."); *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) (explaining that *Rooker-Feldman* does not apply if "the state court had not rendered a judgment before the district court proceedings began"); *Parker v. Lyons*, 757 F.3d 701, 705–06 (7th Cir. 2014), *overruled on other grounds by Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 402 (7th Cir. 2023) ("Since *Saudi Basic Industries*, all federal circuits that have addressed the issue have concluded that *Rooker-Feldman* does not apply if, as here, a state-court appeal is pending when the federal suit is filed.").

"The *Rooker-Feldman* doctrine's inapplicability when there is no-state court ruling at the time the federal suit is commenced is a logical consequence of the first substantive element of the doctrine – that the federal suit complain of injuries caused by a state-court judgment. If there is no state-court judgment when the federal suit is filed, the federal plaintiff cannot be

complaining of an injury caused by a nonexistent state-court judgment." *See* 18 James Wm. Moore *et al.*, Moore's Federal Practice § 133.33[2][c] (3d ed. 2023).

In the case at hand, *Rooker-Feldman* does not come into play. Stewart filed the federal lawsuit before, not after, the state case ended. So the *Rooker-Feldman* doctrine doesn't apply.

Stewart filed this federal lawsuit on June 13, 2023. *See* Cplt., at 1 (Dckt. No. 1). At that point, the state court case was still underway.

One month later, on July 12, 2023, the state court granted summary judgment to Chase. *See* 7/12/23 Summ. J. Order (Dckt. No. 15-30). The state court entered the judgment of foreclosure and sale on July 12. *See* 7/12/23 Judgment (Dckt. No. 15-31). So, on July 12, 2023, the state-court proceedings became final. *See Kyles v. Fed. Home Loan Mortg. Corp.*, 2018 WL 1784133, at *5 (N.D. Ill. 2018) (holding that judgment of foreclosure counts as final judgment for *Rooker-Feldman* bar).

Stewart filed this case in *June* 2023. The state court entered judgment in the foreclosure action in *July* 2023, one month later.

*Rooker-Feldman* applies when a federal lawsuit begins after a state court case ends. That's not what happened here. It's the other way around. The federal case began in June, and the state case ended in July.

Again, the issue isn't so much that Stewart is challenging state court rulings that took place before the entry of judgment. *Rooker-Feldman* applies when a federal litigant challenges a state court judgment, directly or indirectly. *See McGoffney v. Kincaid*, 2024 WL 50465 (7th Cir. 2024). Seventh Circuit precedent is mixed on whether a party can undermine a judgment through the backdoor by challenging interlocutory orders in state court. *Compare Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) ("[*Rooker-Feldman*] does not apply independently to

16

interlocutory orders."), *with Sykes v. Cook County Circuit Court Probate Div.*, 837 F.3d 736, 742 (7th Cir. 2016) ("[W]e have held that interlocutory orders entered prior to the final disposition of state court lawsuits are not immune from the jurisdiction-stripping powers of *Rooker Feldman*."), *and Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014) ("Nothing in the Supreme Court's decisions suggests that state-court decisions too provisional to deserve review within the state's own system can be reviewed by federal district and appellate courts. The principle that only the Supreme Court can review the decisions by the state judiciary in civil litigation is as applicable to interlocutory as to final state-court decisions. A truly interlocutory decision should not be subject to review in *any* court; review is deferred until the decision is final.").[6]

Instead, the issue is timing. *Rooker-Feldman* applies only if a state case ends before a federal case starts. The timing matters because the doctrine is about challenging a state court *judgment*. Here, the state case ended in July 2023. But Stewart filed this federal case in June 2023, one month earlier. He filed the federal case before, not after, the state case finished. So *Rooker-Feldman* does not apply.

\*       \*       \*

This case lives in an Abstention Netherworld. *Colorado River* does not apply because the state court case is over. And *Rooker-Feldman* does not apply because Stewart filed this case before the state court case ended. Stewart filed the case late enough to miss *Colorado River* abstention, and early enough to avoid the *Rooker-Feldman* doctrine.

Timing-wise, the abstention doctrines are miss by an inch, miss by a mile. So this Court has subject matter jurisdiction after all. The case, it seems, has fallen in between the jurisdictional cracks. It's in jurisdictional No Man's Land.

---

[6] It would be strange if federal courts couldn't review state court judgments (because of *Rooker-Feldman*), but *could* review interlocutory orders leading up to a judgment. That's upside down.

In many ways, this case seems like the sort of case where an abstention doctrine *should* apply. After all, Stewart is calling into question the decisions of the state court, on procedural questions involving state law. He is challenging what happened under state law in state court, and is invoking federal law in federal court to do so.

The idea behind *Rooker-Feldman* is to prevent parties from running to federal court to challenge something that happened in state court. A federal district court has no authority to second-guess state courts. The doctrine keeps federal courts out of state court business.

That rationale explains why the case at hand seems to cry out for some sort of abstention doctrine. In effect, Stewart is attempting to undermine what happened in state court. He is trying to undo the state court's foreclosure judgment. *See Mains v. Citibank, N.A.*, 852 F.3d 669, 676 (7th Cir. 2017). If Stewart is trying to get out from under a state court judgment, a federal district court should not hand him a shovel.

Stewart filed suit in federal court before the state court case was over – when the writing was on the wall, but the ink was not yet dry. There doesn't seem to be much difference between a state court loser and a state court soon-to-be loser.

The timing of the filing of the federal lawsuit seems less important than the substance. At bottom, Stewart is asking a federal court to pull the rug out from under the judgment of the state court. That's exactly the type of thing that *Rooker-Feldman* was trying to avoid.

If this Court lacks jurisdiction to review the decisions of a state court, *see Jakupovic*, 850 F.3d at 902, then it shouldn't matter if the federal complaint came before or after the state case ended. It should not matter that Stewart got a jump start on his federal lawsuit, and filed suit shortly before the state court case crashed down on him.

The boundaries of *Rooker-Feldman* seem a bit narrow for what *Rooker-Feldman* is trying to achieve. The goal is to prevent parties from running to federal court to undo something that happened in state court. If that's the goal, then it shouldn't matter that the litigant got a head start and jumped to the federal courthouse shortly before the case ended in state court.

That said, *Rooker-Feldman* occupies "narrow ground," by design. *See Saudi Basic Indus.*, 544 U.S. at 284; *Sykes*, 837 F.3d at 742 ("*Rooker-Feldman* has its limits."); *Christopherson v. American Strategic Ins. Corp.*, 999 F.3d 503, 509 (7th Cir. 2021). It is this Court's job to enforce the boundaries, not expand the terrain.

## II.     Fair Debt Collection Practices Act (Counts I & II)

With the jurisdictional waters cleared up, the Court turns to the arguments on the merits. Stewart brings two claims against the bank and its lawyers under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* *See* Cplt., at 13–18 (Dckt. No. 1).

The FDCPA regulates the activity of "debt collectors." *See* 15 U.S.C. § 1692 *et seq.* "The FDCPA prohibits 'debt collectors' from engaging in abusive, deceptive, or unfair debt-collection practices." *Stewart v. JPMorgan Chase Bank, N.A. (Stewart I)*, 2020 WL 444248, at *2 (N.D. Ill. 2020) (citing *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010)). The FDCPA includes lots of requirements and plenty of prohibitions, but only two them are relevant here.

In Count I, Stewart brings a claim under section 1692d. That provision says that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." *See* 15 U.S.C. § 1692d. In particular, Stewart invokes a provision that bans "use of obscene or profane language or

language the natural consequence of which is to abuse the hearer or reader." *See* 15 U.S.C. § 1692d(2).

In Count II, Stewart brings a claim under different provision, section 1692e. That provision prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *See* 15 U.S.C. § 1692e.

Stewart presses into service two subparts of section 1692e. One subsection covers a "threat to take any action that cannot legally be taken or that is not intended to be taken." *See* 15 U.S.C. § 1692e(5). The other subsection bans the "use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." *See* 15 U.S.C. § 1692e(9).

The bank moved to dismiss the claims under the FDCPA for failure to state a claim. But the bank's lawyers, for whatever reason, did not.

### A. The Bank

Chase argues that it falls outside the reach of the FDCPA. As the bank sees things, "it is the original creditor of Stewart's Mortgage . . . and creditors are not 'debt collectors' under the FDCPA." *See* Chase Mem. in Support of Mtn. to Dismiss, at 14 (Dckt. No. 15).

The Court agrees. So did the last federal judge in this building.

The statute covers debt collectors, not creditors. *See Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). "Creditors are . . . not subject to the FDCPA as long as they are collecting their own debt in their own name and their 'principal purpose' as an entity is not debt collection." *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 466 (7th Cir. 2018) (citations omitted); *see also* 15 U.S.C. § 1692a(4).

Here, Chase was the original creditor. Stewart obtained the mortgage loan from Chase, as the mortgage itself reveals. *See* Mortgage (Dckt. No. 15-2).[7] The mortgage lists the lender as "JPMorgan Chase Bank, N.A." and the borrower as "James Stewart." *Id.*

This Court doesn't have to look very far for confirmation that Chase was Stewart's creditor. Another judge in this federal courthouse already reached that conclusion. A few years ago, Judge Rowland handled an earlier lawsuit filed by Stewart against Chase and McCalla (among other defendants). *See Stewart v. JPMorgan Chase Bank, N.A. (Stewart III)*, 2020 U.S. Dist. LEXIS 13654, at \*8 (N.D. Ill. 2020). And Judge Rowland squarely held that Chase was a creditor, not a debt collector. *Id.* ("Chase therefore cannot be considered a 'debt collector' under the FDCPA, because it was collecting its own debt.").

Judge Rowland also explained that, "[e]ven if Chase were the mortgage servicer, it could only be sued as a debt collector if the loan was in default when Chase began servicing the loan." *See id.* (citing 15 U.S.C. § 1692a(6)(F)(iii); *Foster v. PHH Mortg.*, 2016 U.S. Dist. LEXIS 156393, 2016 WL 6647925, at \*3 (N.D. Ill. 2016)). But Stewart did not allege that the loan "was ever in default, let alone at the time Chase began servicing the loan." *Id.*

The existence of Judge Rowland's decision raises a broader question, which the parties seem to overlook. Despite citing Judge Rowland's opinion – and relying on Judge Rowland's rationale – Chase does not mention "collateral estoppel" or "issue preclusion" in its briefing. *See generally* Chase Mem. in Support of Mtn. to Dismiss (Dckt. No. 15). But as this Court sees things, collateral estoppel provides a clear-cut reason for cutting off Stewart's FDCPA claims against Chase.

---

[7] The Court may rely on the mortgage in ruling on the motions to dismiss, since the mortgage is a matter of public record. *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *see also Stewart v. JPMorgan Chase Bank, N.A.* (*Stewart II*), 2020 WL 433888, at \*5 (N.D. Ill. 2020) (relying on McCalla's attachment of mortgage to motion to dismiss in earlier action brought by Stewart).

21

The "doctrine of issue preclusion ordinarily bars relitigation of an issue of fact or law raised and necessarily resolved by a prior judgment." *Bravo-Fernandez v. United States*, 580 U.S. 5, 10 (2016). "[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States,* 440 U.S. 147, 153 (1979). "[T]he principle is simply that later courts should honor the first actual decision of a matter that has been actually litigated." *See* 18 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 4416 (3d ed. 2023).

Stewart and Chase already went to the mat over whether Chase was a debt collector or a creditor under the FDCPA. Judge Rowland determined that Chase was a creditor, not a debt collector. *See Stewart III*, 2020 U.S. Dist. LEXIS 13654, at *8. That ruling is squarely on point. It involves the same mortgage, and the same parties, and the same statute. The only difference is the floor number in the federal courthouse.

Stewart doesn't get a do-over before this Court. Chase scored a knock-out in the case before Judge Rowland, and the case at hand is not an opportunity for a rematch. Issue preclusion applies, and Stewart can't reargue that Chase was a debt collector.

## B.    The Bank's Lawyers

Stewart also brought claims against the bank's lawyers, including the law firms and the individual attorneys. Unlike the bank itself, the lawyers did not move to dismiss, except on abstention grounds. That is, the lawyers did not make any argument that the complaint failed to state a claim under the FDCPA. By taking a pass, the lawyers left some meat on the table.

22

As a starting point, one might wonder whether lawyers can be sued at all under the FDCPA. After all, the Fair Debt Collection Practices Act is about "debt collectors." At first blush, it might not seem intuitive that the statute covers legal advocates.

As it turns out, attorneys are not beyond the reach of the FDCPA. A debt collector is someone who "regularly collects or attempts to collect" debts. *See* 15 U.S.C. § 1692a(6). The Supreme Court has held that "the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995); *see also Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 810 (7th Cir. 2016) (explaining that "pleadings or filings in court can fall within the FDCPA"). The Act applies to debt collectors and, by extension, the people who "regularly" do their bidding and collect on their behalf.

Lawyers sometimes make legal mistakes, and sometimes legal errors can give rise to liability under the FDCPA. The statute includes a carve-out for violations that were "not intentional and resulted from a bona fide error." *See* 15 U.S.C. § 1692k(c). But that carve-out is not a saving grace. The Supreme Court has held "that the bona fide error defense in [the FDCPA] does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604–05 (2010).

The Supreme Court acknowledged that the decision could result in "debt collecting lawyers fac[ing] liability for mistaken interpretations of the requirements of the FDCPA." *Id.* at 604. But it is up to Congress to fix any overbreadth problems created by a statute that Congress adopted. *Id.*

The rule forces lawyers to internalize the cost of any legal misadventures. "In essence, the Court [in *Jerman*] read the Act as putting the risk of legal uncertainty on debt collectors, giving them incentives to stay well within legal boundaries." *Oliva v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 864 F.3d 492, 499 (7th Cir. 2017) (en banc). If lawyers make mistakes of law when going after a debtor, and violate the FDCPA in the process, then the lawyers might be on the hook.

Under the Act, targeting a complaint at lawyers is fair game. But the Act does not create open season on lawyers, either. The FDCPA doesn't lower the bar for claims against members *of* the bar. Nothing in the FDCPA says that a debtor can sue any and every lawyer who attempts to collect a debt on behalf of the client.

Quite the opposite – the Act applies only if the attorneys engaged in one of the "abusive, deceptive, and unfair debt collection practices" covered by the statute. *See* 15 U.S.C. § 1692. Lawyers, like anyone else, have no liability unless they violate one of the provisions of the statute. Lawyers don't have a special blanket of protection – but lawyers don't have fatter targets on their backs, either.

That's where the complaint at hand runs into trouble. The complaint does not contain any facts that could support a reasonable inference that the attorneys in question violated the statute.

The complaint alleges that the bank's lawyers pursued litigation in state court to collect on the debt. And the complaint points to a number of filings and other motions that the lawyers filed along the way. *Successful* motions.

The complaint points to a few provisions of the FDCPA, but it does not appear to allege facts supporting a violation of those provisions. The complaint invokes section 1692d(2), but

24

does not allege that the lawyers used "obscene or profane language or language the natural consequence of which is to abuse the hearer or reader." *See* 15 U.S.C. § 1692d(2). The complaint also cites section 1692e, but does not allege that the lawyers used "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *See* 15 U.S.C. § 1692e. The complaint does not allege, for example, that the lawyers lied to the state court judge about the facts.

Instead, the complaint alleges that the lawyers litigated – successfully. Stewart alleges that the lawyers violated the FDCPA because they took positions that, in Stewart's view, were inconsistent with Illinois rules of procedure.

Specifically, Stewart alleges that McCalla filed a motion to reinstate and amend the state court complaint in violation of due process. *See* Cplt. at ¶ 30 (Dckt. No. 1). Stewart further claims that Heavner advocated vacating the dismissal of a foreclosure proceeding in bad faith. *See id.* at ¶ 40. Stewart also asserts that the two law firms continued litigating against him even though they knew that vacating the dismissal of the foreclosure proceeding violated "the one re-file rule," and that the lawyers "continued advocating foreclosing after the case has been dismiss[ed] three times to harass, cause unnecessary delay and needlessly increase the cost of litigation." *Id.* at ¶ 44; *see also* ¶¶ 43, 50–51. Finally, Stewart contends that the "filing and reading of the motion for summary judgment" in the foreclosure suit was "harassing and abusive to[] cause unnecessary delay and increase the cost of litigation." *Id.* at ¶ 52.

At bottom, Stewart is complaining about questions of state procedure, as decided by a state court judge. Stewart contends that the state court should not have reinstated the second lawsuit, and so on. Stewart thinks that the state court got state law wrong. But the state court saw things differently – and the state court's view of state law is the only thing that matters.

25

It is one thing to allow claims against lawyers for getting the law wrong. *See Heintz*, 514 U.S. at 299; *Jerman*, 559 U.S. at 604–05. It is another thing altogether to allow claims against lawyers for getting the law *right*.

A state court, not a federal court, is the final word on the meaning of state law and state procedure. The bank's lawyers made arguments under state law in state court, and the state court judge agreed with them. The FDCPA is not a vehicle for second-guessing state court decisions about state law. *See Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 875 (7th Cir. 2015) ("[W]e very much doubt that a state court motion for summary judgment – filed to collect an overdue credit card debt – could qualify as an unfair or unconscionable act under the FDCPA."); *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 472–73 (7th Cir. 2007) ("[I]t is far from clear that the FDCPA controls the contents of pleadings in state court."); *see also Skibbe v. U.S. Bank Trust, N.A.*, 309 F. Supp. 3d 569, 575 (N.D. Ill. 2018) ("The Fair Debt Collection Practices Act . . . is not a mechanism to remedy violations of state pleading requirements. Nor is it an avenue to recover for violations of state laws."); *Webb v. Law Office of Ira T. Nevel, LLC*, 2016 WL 946962, at (N.D. Ill. 2016) ("Although the Seventh Circuit has not directly addressed inconsistencies between state-law pleading requirements and the FDCPA, it has strongly suggested that 'the state's rules of procedure, not federal law' govern the contents of state court pleadings and the litigation process.") (quoting *Beler*, 480 F.3d at 473); *Pantoja v. Portfolio Recovery Assoc., LLC*, 2015 WL 1396609, at *3 (N.D. Ill. 2015) ("This court finds *Beler*'s logic persuasive here and declines to police the adequacy of state court filings in the context of an FDCPA claim. Any attack on the State Court Complaint should occur in state court, as several other courts in this district have concluded."); *St. John v. CACH, LLC*, 2014 WL 3377354, at *3 (N.D. Ill. 2014) ("It is well-established in this district that FDCPA claims cannot

26

be based on violations of the Illinois state pleading requirements."); *Washington v. North Star Capital Acquisition, LLC*, 2008 WL 4280139, at \*2 (N.D. Ill. 2008) ("Washington's 1692(e) claim is premised on an alleged violation of Illinois state pleading requirements and the FDCPA will not be used as a vehicle to litigate claims arising under the Illinois rules of civil procedure.").

The Supreme Court in *Heintz* recognized that Congress opened the door to lawsuits against lawyers. But the Supreme Court also pointed out that the door was open only so far. The FDCPA has an "apparent objective of preserving creditors' judicial remedies." *See Heintz*, 514 U.S. at 296. In particular, the statutory ban on making any "threat to take action that cannot legally be taken" has limits. *See* 15 U.S.C. § 1692e(5). "[W]e do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'" *See Heintz*, 514 U.S. at 296.

By the look of things, Stewart's complaint does not allege a violation of the FDCPA by the bank's lawyers. He alleges that the bank's lawyers took positions about state procedure under state law, and the state court judge agreed with them. That's not a claim under the FDCPA. Getting state law right isn't a violation of federal law.

The FDCPA claims against the lawyers are dismissed. That said, the bank's lawyers did not move to dismiss on this ground. Out of fairness, the Court will grant Stewart leave to amend.

## III.    Illinois Consumer Fraud and Deceptive Business Practices Act (Count III)

Count III alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* by the Heavner Defendants and the McCalla Defendants. *See* Cplt., at 18 (Dckt. No. 1).

27

Stewart claims that the McCalla and Heavner Defendants violated the Act by (1) moving to reinstate the second foreclosure action and (2) moving for summary judgment in the consolidated action. *Id.* at ¶¶ 60–61. Both the McCalla and Heavner Defendants argue that Count III should be dismissed because the Act does not apply to claims relating to legal services. *See* McCalla Mem. in Support of Mtn. to Dismiss, at 6 (Dckt. No. 27); Heavner Mem. in Support of Mtn. to Dismiss, at 6 (Dckt. No. 30).

The Illinois consumer protection statute does not apply to claims arising from the "actual practice of law." *Cripe v. Leiter*, 703 N.E.2d 100, 105 (Ill. 1998); *see also G & G Closed Cir. Events, LLC v. Castillo*, 327 F. Supp. 3d 1119, 1134 (N.D. Ill. 2018). The Act does not "apply to the conduct of attorneys in relation to their clients." *Cripe*, 703 N.E.2d at 106. A plaintiff cannot bring misconduct-related claims against someone else's attorney under the Act, either. *See Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 944 (N.D. Ill. 2012); *see also Griffin v. U.S. Bank Nat'l Ass'n*, 2016 U.S. Dist. LEXIS 89775, at *7 (N.D. Ill. 2016).

Count III is solely based on litigation-related conduct by the McCalla and Heavner Defendants. Stewart seeks to hold the McCalla and Heavner Defendants liable because of motions filed on behalf of their client. *See* Cplt., at ¶¶ 60–61 (Dckt. No. 1).

Motions practice goes to the very core of what lawyers do. Litigators prepare and file motions. The conduct of the McCalla and Heavner Defendants falls squarely under the "actual practice of law" exception to the Illinois Consumer Fraud and Deceptive Business Practices Act.

Therefore, Count III is dismissed.

## Conclusion

For the foregoing reasons, the motions to dismiss are granted in part and denied in part. The Court denies the motions to dismiss for lack of subject matter jurisdiction.

The Court grants Defendant JPMorgan Chase Bank, N.A.'s motion to dismiss for failure to state a claim under the FDCPA. The Court grants the bank's motion to dismiss with prejudice. The Court does not grant leave to amend as to JPMorgan Chase Bank, N.A.

The Court also dismisses the claims against the law firms and the attorneys under the FDCPA. The Court dismisses the state law claims, too. The Court grants leave to amend the complaint as to the law firms and the attorneys (only). Any amended complaint is due within 14 days.

Date: February 12, 2024

Steven C. Seeger
United States District Judge